■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. PEDRO GARCIA, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered January 4, 1972 convicting him of possession of a dangerous weapon as a felony, upon a jury verdict, and sentencing him to a

conditional discharge. Judgment reversed, on the law and the facts, and indictment as against defendant Garcia dismissed. On September 3, 1969, at approximately 8:00 P.M., three plainclothes police officers, including Officer Pagnotta, responded to a radio call about a man with a gun. Arriving at a stated address, the officers were met by a women who was bleeding from her nose and face. She claimed that she had been pistol-whipped by her husband, Norberto Mejias. She went with the police in their squad car first to a bar and then to her husband's grocery store in an attempt to find him. Upon leaving the grocery store, she identified the passenger of an automobile pulling up to the curb as her husband. At this point the driver, defendant Garcia, was in no way an object of police inquiry. As the officers approached the car with guns and shields drawn, they saw Mejias reach into his coat, remove a revolver and place it under the seat on which he was sitting. At the trial, Officer Pagnotta testified that he approached the passenger side of the car, told Mejias to put his hands on the dashboard, recovered the revolver from under the seat and told him to get out of the car. Mejias was then handcuffed and brought around to the other side of the car. Garcia was then asked to step out of the car. After Garcia produced credentials satisfying the officers of his ownership of the automobile, he was placed under arrest, predicated on the theory that as an occupant of the vehicle where the gun was found he was presumed to be in possession thereof (see Penal Law, § 265.15, subd. 3). Both men, then under arrest and handcuffed, were frisked as they stood on the sidewalk. Nothing was found as a result of the frisk. Mejias and Garcia were then both put in the rear seat of Garcia's automobile. Instead of a glove compartment, the car had a console running between the front two seats which was accessible to a person seated in the rear. Officer Pagnotta was seated in the driver's seat, intending to drive the arrested men to the precinct in Garcia's car. Pagnotta opened the console to ascertain whether there were any weapons in it. A fellow officer was seated in the passenger seat. Pagnotta thereupon found a second gun, fully loaded and operable, and Garcia was charged with its possession. A motion to suppress this gun as having been unlawfully seized was denied. After the ensuing trial, Garcia was convicted. In our opinion, since the first gun was observed to be in Mejias' physical possession before he placed it under the seat, no presumption of possession was chargeable to Garcia (see Penal Law, § 265.15, subd. 3; *People* v. *Davis*, 52 Misc 2d 184). Moreover, since both Mejias and Garcia were outside the car after their arrests and no necessity existed for the police to commandeer Garcia's car instead of using their own for the purpose of transporting the arrested men to the police station, we hold that none of the prerequisites for a search incidental to a lawful arrest was present. Once the arrested men were outside the car and handcuffed, there was no reasonable basis for any apprehension on the part of the arresting officers of any danger to themselves or of any threat of destruction of any contraband, either or both of which would have justified a search of the car (see *Agnello* v. *United States*, 269 U. S. 20, 30; *Chimel* v. *California*, 395 U. S. 752, 763). While it may be that these prerequisites came into play when the arrested men were placed back into Garcia's car, their availability as bases for the search was attributable to the unnecessary action taken by the police in commandeering the car. Accordingly, they could not be utilized to justify the seizure of the second gun. Therefore, it is our view that the second gun was the fruit of an illegal search and should have been suppressed. Since proof of possession thereof was inadmissible, the People's case, which is necessarily predicated thereon, must fall. Rabin, P. J., Hopkins and Martuscello, JJ., concur; Munder, J., dissents and votes to affirm the judgment, with the following memorandum, in which Latham, J., concurs: A policeman,

searching for an alleged pistol-whipping wifebeater, found the latter a passenger in an automobile owned and operated by defendant. After stopping the car, the officer approached it and noticed the passenger remove a revolver from his jacket and toss it under the front seat. He ordered the two men out of the car and, reaching under the seat, retrieved the revolver. After the officer and his partner frisked the two men, he decided to take both of them to the police station. He ordered them into the back seat of defendant's car and he occupied the driver's seat. His partner was to follow in the police car. Before proceeding, he reached into the console behind the shift lever alongside the driver's seat and there he found a second revolver. It was loaded and operative. Defendant was thereafter indicted for illegal possession of this second revolver. After the denial of his motion to suppress the evidence as the product of an illegal search, defendant was tried and convicted. On this appeal the majority concludes that since the officer observed the passenger secrete a revolver under the front seat of the car, the presumption of its illegal possession by all occupants of the car did not apply. Therefore, they reason, defendant's arrest was without probable cause and the subsequent search unauthorized. I think this draws the line of constitutionality too fine. " In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" (*Brinegar* v. *United States*, 338 U. S. 160, 175). Subdivision 3 of section 265.15 of the Penal Law, insofar as here pertinent, reads: " The presence in an automobile, other than a stolen one or a public omnibus, of any firearm * * * is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon * * * is found, except under the following circumstances: (a) if such weapon * * * is found upon the person of one of the occupants therein ". On a literal reading of the statute, the arrest of defendant was justified. I do not think we should require an officer to make the legal interpretation made by Mr. Justice Shapiro, at Criminal Term, in *People* v. *Davis* (52 Misc 2d 184), that the exception is satisfied if the policeman sees one of the occupants of a car take a revolver from under his shirt and put it under the front seat. Since the officer found the revolver in the car and not actually on the person of either occupant, I believe it was entirely reasonable and proper for him to take both occupants of the car to the station house where the legal niceties could be determined. Even if this were not true in respect to the possession of the first revolver, it was at least a reasonable police action if done only to secure the arrest of the alleged wifebeater or to guard the officers' own safety. It is not inconceivable that defendant, if then released, could have made an effort to deliver his friend; and this becomes more realistic in the light of the fact that he did possess a weapon. Assuming the reasonableness of the arrest of defendant, there was no impropriety in conveying him and his friend in defendant's car. Nor, in that circumstance, was there any inpropriety in the officer securing his own safety by a search of the area immediately within reach of his prisoners (cf. *People* v. *Lewis*, 26 N Y 2d 547; *Chimel* v. *California*, 395 U. S. 752, 763). Especially in a situation of this kind, we should be more concerned with the safety of policemen and the general protection of the public than with the preservation of the very tenuous rights of an obvious lawbreaker.